THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MORGAN D. RYAN, Appellant.

Third Department, December 30, 1958.

*N. Le Van Haver* for appellant.

*Bernard Tompkins, Leonard E. Reisman, Joseph F. Soviero, Jr.,* and *Robert Orseck* for respondent.

HERLIHY, J. The grounds for the disqualification of the Presiding Justice are briefly as follows: (1) statements claimed

to be prejudiced and biased made by the court in a public drug store; (2) daily luncheon companionship with members of the staff of the Assistant Attorney-General's office; (3) a letter written to the Presiding Justice of the Supreme Court, State of New Jersey, concerning the Ulster County investigation; (4) telephone conversation between the court and a news reporter concerning events of the investigation.

By order dated November 26, 1958 the court denied the motion for disqualification after rather lengthy court proceedings.

Counsel for appellant has cited cases concerning the attitude and demeanor of Judges in the conduct of criminal proceedings. (*People* v. *McDermott,* 180 Misc. 247; *Matter of Prentice* v. *Gulotta,* 13 Misc 2d 280, 282; *People* v. *Naimark,* 154 App. Div. 760; *People* v. *Silverman,* 252 App. Div. 149, 177; *Matter of Richardson,* 247 N. Y. 401, 422.)

In all criminal matters, a judge of necessity must disassociate himself from either side of the controversy so that there can be no possible motivation for criticism or attack. There must be a guarantee of judicial indifference to individuals. It is our opinion that this defendant has no cause for complaint as to the conduct of the Presiding Justice. Indeed, Mr. Justice GREENBERG on occasions gave every indication of exercising great judicial patience in endeavoring to see that the interests of this defendant were protected. We accordingly affirm the order denying disqualification.

As to the order finding defendant guilty of contempt for failure to answer interrogatories, the facts demonstrate that the appellant first appeared before the Grand Jury in obedience to a subpœna on October 23, 1958, when according to the record he was offered a form entitled "Waiver of Immunity" which he refused to sign. Later at the same session he agreed to sign a limited waiver as to the conduct of his official duties (Research Assistant, Ulster County Department of Public Welfare). Immediately thereafter he was advised that any answers he might give might be used against him; that the Grand Jury was not conferring any immunity on him. Then he was questioned concerning financial transactions between himself and others, all of which questions he answered, and which constitute part of the basis for the contempt. This might well be considered "preliminary and background testimony". (*People* v. *Saperstein,* 2 N Y 2d 210, 218.)

He appeared as directed on Monday, October 27, and delivered to the Grand Jury a letter, dated the same day which indicated that "any and all questions put to me before your body, I refuse to answer on the ground that they may tend to incrim-

inate me ''. He was thereupon directed to accompany the foreman and to appear before the Presiding Justice in his chambers. This he did, accompanied by his attorney, and he was excused until November 6 for the purpose of obtaining certain records as to bank statements.

Upon the return date, Ryan again appeared and was reminded by the Special Prosecutor that the Grand Jury had conferred no immunity upon him and any answers he might give might be used against him whereupon he (Ryan) refused to answer any questions and handed the foreman another letter refusing to answer further questions but thereafter qualified by agreeing and signing a limited waiver insofar as his position as Research Assistant, Ulster County Department of Public Welfare. He did not refuse to answer any questions as none were asked of him. He was thereupon excused and contempt proceedings resulted.

The People contend that having appeared, been advised of his rights and testified, he waived his claim to immunity and must continue to testify under the penalty of the contempt order now in force. This is so, we are told, under the provisions of section 2447 of the Penal Law. The court in reaching its conclusion relied upon two cases, *Rogers* v. *United States* (340 U. S. 367) and *Regan* v. *New York* (349 U. S. 58).

In the *Rogers* case the facts were governed by Federal procedure. The court said (p. 373): '' *federal courts* have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details.'' (Emphasis supplied.)

Thereafter the court further said (p. 374): '' Requiring full disclosure of details after a witness freely testifies as to a criminating fact does not rest upon a further ' waiver ' of the privilege against self-incrimination. Admittedly, petitioner had already ' waived ' her privilege of silence when she freely answered criminating questions relating to her connection with the Communist Party. But when petitioner was asked to furnish the name of the person to whom she turned over Party records, the court was required to determine, as it must whenever the privilege is claimed, whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures. As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a ' real danger ' of further crimination.''

In the *Regan* case the petitioner refused to testify before a New York Grand Jury investigating alleged association between

city policemen and criminals. This was prior to the enactment of section 2447 but the court said therein (p. 62): "The immunity statute is crucial in this case because it removed any possible justification which petitioner had for not testifying. *If petitioner had not executed a waiver of immunity,* it is clear beyond dispute that he would have had to testify; the statute would have provided him with immunity from prosecution on the matters on which his testimony was sought, and thus his testimony could not possibly have been self-incriminatory." (Emphasis supplied.)

Both cases materially differ from the present facts but are not inconsistent with our holding herein.

*People ex rel. Hofsaes* v. *Warden of City Prison* (302 N. Y. 403) concerned the refusal of a policeman to testify after executing a written waiver pursuant to section 2446 of the Penal Law.

It follows, in view of the attitude of the defendant, that if the Prosecutor wishes his testimony, he must be granted immunity in return for his testimony, under the procedure outlined in section 2447 of the Penal Law.

Section 2447 (added 1953) of the Penal Law gives authority to the Grand Jury to confer immunity except as to perjury or contempt. It might be seriously argued in this case that section 2447 was not put into operation by the Ulster County Extraordinary Grand Jury but assuming it was, we reach the more important question of whether after warning of the Special Prosecutor and testifying, the defendant waived all claim to immunity thereafter and was compelled, as the court found, to freely testify.

This presents a new problem not heretofore considered.

*People* v. *De Feo* (308 N. Y. 595) having to do with an investigation concerning " splitting commissions of labor unions and other persons " differs from the present facts in that the defendant was not informed of his rights until his fourth appearance before the Grand Jury; claimed his privilege; was granted immunity and directed to answer questions.

In the present situation, at the first session of the Grand Jury defendant (Ryan) refused to sign a waiver of immunity although he signified his willingness to testify. Likewise on November 6 when the defendant appeared, the Special Prosecutor advised that the Grand Jury had conferred no immunity and anything he said might be used against him. If the People are correct in their present contention, that warning to the defendant would have been of no purport. We find section 2447 is a procedural remedy and not in conflict with the fundamental rights given

under the Constitution (N. Y. Const., art. I, subd. 6). In our opinion, when a witness agrees to waive his immunity, it still requires the necessity of his signing a written form in compliance with section 2446 and the filing thereof in the office of the clerk. Under this long-established procedure, there will never be any guess or surmise as to the intentions of the party or parties. Regardless of the oral warning given to the defendant, his refusal to sign a written waiver cannot be construed to infer or imply that testifying after such warning constituted a waiver.

The letters mentioned as exhibits herein were sufficient notice to the Grand Jury and the Special Prosecutor of the defendant's change of mind. It was then necessary to either excuse him or grant him immunity in accordance with section 2447 of the Penal Law.

The order finding defendant guilty of contempt should be reversed and he may purge himself thereof by appearing before the Grand Jury at the adjourned date and either testifying or claiming his constitutional immunity subject to the procedural provisions of section 2447 of the Penal Law.

The order denying disqualification of the Justice should be affirmed.

FOSTER, P. J., BERGAN, GIBSON and REYNOLDS, JJ., concur.

Order denying disqualification of the Justice affirmed, without costs.

Order finding defendant guilty of contempt reversed in accordance with the following: appellant may purge himself thereof by appearing before the Grand Jury at the adjourned date and either testifying or claiming his constitutional immunity subject to the procedural provisions of section 2447 of the Penal Law.