■ FAY REY, Appellant-Respondent, v PARK VIEW NURSING HOME, INC., Respondent-Appellant, and MARIO CONSTANTINO, Respondent. [692 NYS2d 686] —In an action to recover damages for personal injuries, (1) the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Nassau County (O'Connell, J.), dated May 12, 1998, as (a) granted the motion of the defendant Mario Constantino to dismiss the complaint insofar as asserted against him as time-barred, and (b) granted the motion of the defendant Park View Nursing Home, Inc., d/b/a Park View Nursing Home, and d/b/a B&J Nursing Home, to dismiss the third and fourth causes of action in the complaint insofar as asserted against it, and (2) the defendant Park View Nursing Home, Inc., d/b/a Park View Nursing Home, and d/b/a B&J Nursing Home cross-appeals from so much of the same order as failed to indicate that its cross claim against the defendant Mario Constantino survived the dismissal of the

plaintiff's direct claims against the defendant Mario Constantino, and failed to deem the cross claim a third-party action.

Ordered that the order is affirmed insofar as appealed and cross-appealed from, with one bill of costs payable by the plaintiff.

The plaintiff's decedent, a 76-year old stroke victim who had suffered paralysis of the right side of her body, was transferred from a rehabilitation center to the defendant nursing home on September 20, 1993. The decedent's medical records indicated that she suffered numerous medical conditions, including diabetes, senility, and dementia. The records also showed that she was impulsive, had poor safety awareness, and had fallen down on one occasion at the rehabilitation center and required "vest restraint 24 hours a day". The decedent also required an ankle and foot orthosis, a cane, and minimal to moderate assistance in order to ambulate.

The defendant Mario Constantino, a physician affiliated with the nursing home, examined the decedent on the date the decedent was transferred to the defendant Park View Nursing Home, Inc., d/b/a Park View Nursing Home, d/b/a B&J Nursing Home (hereinafter the nursing home). The decedent did not have her ankle and foot brace at the time. It is not clear from the record whether the ankle and foot brace accompanied her to the nursing home. In either event, the ankle and foot brace was never located.

On September 22, 1993, the decedent fell or slid out of her wheelchair onto the floor while in the nursing home's main dining room. There is no indication how she slid or fell out of the chair. The nursing home informed Dr. Constantino of the incident, and the decedent was examined and found to have suffered no injuries. In order to prevent a recurrence, the nursing home's staff placed a wedge cushion in her wheelchair.

However, the very next day, on September 23, 1993, the decedent again fell or slid out of the wheelchair. The decedent told the nursing home staff that she was trying to stand up. Dr. Constantino was not advised of this incident. After this incident, the nursing home staff secured the decedent into the wheelchair with a seat belt.

On September 29, 1993, the decedent unbuckled the seat belt, slid out of her wheelchair and fell to the floor. Apparently, prior to this fall, a nursing home staff member became aware that the decedent could unbuckle the belt. A telephone call was made to Dr. Constantino after the fall, who then Ordered the decedent confined to a recliner in a supine position to prevent her from attempting to stand up.

On October 3, 1993, the recliner was adjusted to a partially reclined position by the nursing home staff so that the decedent could digest her breakfast. She fell out of the recliner and sustained a hip fracture. The decedent was taken to a hospital for treatment of her injuries. She died in January 1994 without recovering from the injuries. The Incident Report filed by the nursing home after the decedent's fall on October 3, 1993, indicated that another resident of the nursing home stated of the decedent, "I saw her wiggling and wiggling. That one was always moving. She did not say anything. She just wiggled out of the chair".

The plaintiff commenced an action against the nursing home to recover, *inter alia*, punitive damages for injuries sustained by the decedent when she fell on October 3, 1993. Subsequently, she also commenced an action against Dr. Constantino to recover, *inter alia*, punitive damages based on a cause of action sounding in medical malpractice. After the two actions were consolidated, the nursing home and Dr. Constantino asserted cross-claims against each other.

The Supreme Court properly dismissed the complaint insofar as asserted against Dr. Constantino on the ground that the plaintiff's cause of action against him sounds in medical malpractice, rather than simple negligence, and is, therefore, barred by the 2½-year Statute of Limitations. "[T]he distinction between medical malpractice and negligence is a subtle one, for medical malpractice is but a species of negligence and 'no rigid analytical line separates the two' " (*Weiner v Lenox Hill Hosp.*, 88 NY2d 784, 787, quoting *Scott v Uljanov*, 74 NY2d 673, 674). However, "a claim sounds in medical malpractice when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician' * * * By contrast, when 'the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but the * * * failure in fulfilling a different duty', the claim sounds in negligence" (*Weiner v Lenox Hill Hosp., supra*, at 788). Here, the complaint, as amplified by the bill of particulars, essentially attempts to impose liability on Dr. Constantino based upon his improper assessment of the decedent's mental and physical condition and the degree of supervision required, particularly with regard to her impulsiveness and her ability to ambulate without assistance. The plaintiff's allegations that Dr. Constantino failed to review the decedent's medical history and records, failed to give proper instructions to the nursing home staff relative to the decedent's care, and failed to provide adequate, constant, and continual

care, indicate that the duty alleged to have been breached by the doctor arises from the physician-patient relationship and/or bears a substantial relationship to the rendition of medical treatment by a licensed physician and, therefore, sounds in medical malpractice (*see, Weiner v Lenox Hill Hosp., supra; Fox v White Plains Med. Ctr.,* 125 AD2d 538; *Stanley v Lebetkin,* 123 AD2d 854).

The court also did not err in dismissing the third and fourth causes of action which sought to recover punitive damages from the nursing home. Punitive damages are warranted where the conduct of the party being held liable evidences a high degree of moral culpability (*Giblin v Murphy,* 73 NY2d 769, 772) or where the conduct is so flagrant as to transcend mere carelessness (*Frenya v Champlain Val. Physicians' Hosp. Med. Ctr.,* 133 AD2d 1000, 1001), or where the conduct constitutes willful or wanton negligence or recklessness (*Home Ins. Co. v American Home Prods. Corp.,* 75 NY2d 196, 204). It is not necessary that the conduct complained of be intentionally harmful (*see, Home Ins. Co. v American Home Prods. Corp., supra; Gruber v Craig,* 208 AD2d 900, 901). At bar, it cannot be reasonably concluded that the nursing home's conduct was such as would warrant the award of punitive damages to the plaintiff.

The nursing home's remaining contention is unpreserved for appellate review. Bracken, J. P., O'Brien, Thompson and Sullivan, JJ., concur.