◼ MICHAEL ANGELL, as Administrator of the Estate of BRYAN K. ANGELL, Deceased, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 93189.) [719 NYS2d 158] —Peters, J. Appeal from an order of the Court of Claims (Hanifin, J.), entered March 13, 2000, which granted the State's motion for summary judgment dismissing the claim.

Bryan K. Angell (hereinafter decedent) had a history of psychiatric institutionalization, including five admissions to Bassett Hospital in Otsego County between 1986 and 1988 and six to Binghamton Psychiatric Center (hereinafter BPC) in Broome County from 1987 through 1994. In August 1994, upon his transfer from Bassett Hospital to BPC, he was diagnosed with schizophrenia, epilepsy, tuberous sclerosis, seizure disorder and a history of suicide attempts. Following a neurological consult, a treatment plan was devised by physicians employed by BPC which included, *inter alia*, prescribed medication and psychiatric treatment. Such plan enabled decedent to exercise "grounds privileges" rather than being confined to his treatment unit.

In May 1995, decedent was accepted for placement in a group home and was on the waiting list for discharge. Although he was compliant with medication and was looking forward to increased privileges, angry outbursts, religious delusions and preoccupations were noted. When the frequency of his seizures increased, blood tests were performed to determine his medication levels and a referral was made to a neurologist when increased liver enzymes were noted. During such time, he was placed on closer supervision as a result of expressed frustration in not yet being discharged. Lalita Agneshwar, a clinical physician employed by BPC, testified that although her physical examination did not reveal any damage to his liver, she referred him to Arjun Patel, a physician at BPC, for further examination. Patel recommended a repeat of the liver profile. When one liver enzyme level was still elevated, he recommended that decedent's seizure medication be temporarily discontinued. Agneshwar ultimately concluded, after speaking with decedent's neurologist, that an increase in only one liver enzyme did not warrant a discontinuance of seizure medication and that the rise in such enzyme would not account for

behavioral changes. Agneshwar testified that she saw no reason, at that time, to further increase decedent's supervision.

Decedent's medical records detailed notations that by June 1995 he was becoming more distressed. On July 10, 1995, he was finally transferred to a "transitional living unit" to help him prepare for discharge. Upon his admission, he continued to have full grounds privileges, despite an increase in seizures, since this was viewed as a chronic medical condition. All physicians treating decedent, including his psychiatrist and Robert Grantham, the supervisor for the outpatient community service program at BPC, testified that it was not medically contraindicated to allow a patient who suffers from seizures to be discharged. Decedent's records confirm that he was regularly taking his medication while under staff supervision and was experiencing no increasing problems other than disorientation one day prior to his death.

On June 14, 1995, decedent failed to arrive for his 5:00 P.M. medication. A search was undertaken and at 5:50 P.M. he was located in a closet; he was pronounced dead at 6:05 P.M. While the autopsy report revealed that the cause of death was unknown, it noted "that sudden death may occur in patients with tuberous sclerosis * * * usually due to arrhythmia. Sudden death may also be seen when focal myocardial lymphocytic infiltration is present. In summary, in view of the history of seizure disorder, death was probably due to recurrent, unwitnessed seizure activity."

Claimant, as administrator of decedent's estate,* commenced this action for wrongful death alleging that the State failed to properly supervise and medicate decedent. The State successfully moved for summary judgment upon a finding that the action sounded in medical malpractice, not ordinary negligence, and claimant failed to show that it deviated from an acceptable medical standard of care. The court further granted summary judgment dismissing all claims of medical negligence. Claimant appeals.

A claim sounds in medical malpractice, not ordinary negligence, "when it 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician'" (*Scott v Uljanov*, 74 NY2d 673, 675, quoting *Bleiler v Bodnar*, 65 NY2d 65, 72). Where, as here, the duty alleged to have been breached arises from the physician-patient relationship or from the rendition of medical services

---

* Claimant was substituted as administrator of decedent's estate upon the death of Gordon Angell.

by a licensed physician, with allegations stemming from an "improper assessment of the decedent's mental and physical condition and the degree of supervision" (*Rey v Park View Nursing Home*, 262 AD2d 624, 626), the claim is grounded in medical malpractice (*see, Scott v Uljanov, supra; Rey v Park View Nursing Home, supra; Smee v Sisters of Charity Hosp.*, 210 AD2d 966).

Finding that the proof submitted in connection with the State's motion satisfied its burden to have judgment rendered as a matter of law (*see, Zuckerman v City of New York*, 49 NY2d 557), we review the opposition submitted by claimant. The affidavit of Marvin Denburg, a licensed psychologist, opined that decedent should not have been transferred to a unit with decreased supervision in light of his history of seizures, hallucinations and religious delusions. He further found that the lack of continuous supervision was a "deviation[ ] from acceptable care" and that such decreased supervision impeded "communication among staff." Claimant also propounded the affidavit of Sandra Peterson, a registered nursing supervisor. She emphasized that the disorientation noted in decedent's medical records the day prior to his death should have triggered an increase in his supervision, not a decrease, since this behavior, unusual for decedent, was symptomatic of the onset of a seizure. Had he been more closely supervised, she opined that he would have been protected from injury.

In our view, this proffer was insufficient. The gravamen of these claims is that the State failed to properly assess decedent's mental and physical condition and that it wrongly assessed the need for a lower degree of supervision. As this action in medical malpractice failed to establish an acceptable medical standard from which the State may be found to have deviated or that the raised level of one enzyme in decedent's liver brought about the injuries (*see, Parker v State of New York*, 242 AD2d 785, 786), the motion was properly granted. With regard to the claim of medical negligence, we find no evidence to establish that BPC failed to provide that level of supervision called for in decedent's treatment plan and, accordingly, we are of the view that the Court of Claims appropriately dismissed said claim (*see, Toth v Community Hosp.*, 22 NY2d 255, 264-265).

Crew III, J. P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.