OPINION OF THE COURT
Wayne P. Saitta, J.
Defendants move pursuant to CPLR 4404 (a) for an order to set aside the verdict as “against the weight of the evidence”; pursuant to CPLR 4404, dismissing the jury findings of punitive damages; and pursuant to CPLR 4404 (a), reducing the amount of the punitive damages award as excessive; and for such other and further relief as this court deems just and equitable.
Upon review of defendants’ notice of motion to set aside verdict with exhibits, dated September 14, 2007, and all exhibits annexed thereto; the opposition to posttrial motion of Alberto Casadevall, Esq., counsel for plaintiffs, dated December 6, 2007; and the reply affirmation in support of motion to set aside verdict of Adam Greenberg, Esq., dated February 4, 2008; and after hearing argument of counsel and all proceedings had herein, and after due deliberation thereon, the motion to set aside the verdict is denied and the motion to dismiss or reduce the jury’s findings of punitive damages is denied for the reasons set forth below.
Facts
Plaintiffs sued defendants for damages resulting from the lead paint poisoning of infant plaintiffs, Wendy Solis-Vicuna and Yesenia Solis, while they resided in a building owned by *725 defendants. The jury returned a verdict in favor of plaintiffs Wendy Solis-Vicuna and Yesenia Solis, awarding them $380,000 and $420,000 for future pain and suffering, respectively, but awarding no damages for past pain and suffering. The jury also returned a punitive damages award in the amount of $260,000.
Defendants move to set aside the verdict on the ground that the finding of future pain and suffering without past pain and suffering is inconsistent and/or speculative and that the punitive damages award must be dismissed as there was no evidence to support the finding that defendants acted wilfully, or in the alternative that the award was excessive and should be reduced.
Arguments
Defendants argue that the motion should be granted as the jury’s verdict was against the weight of the evidence presented at trial. Specifically they argue that the jury’s finding of future pain and suffering, without any finding of past pain and suffering, is inconsistent and that the award of future damages was speculative as there was no evidence that either plaintiff had suffered injury at the time of trial.
Defendants further argue that punitive damages cannot stand as no evidence was presented to support a finding that defendants acted with “reprehensible motives” or “malice” in failing to remove the lead paint conditions from the apartment, or that defendants had actual notice that children were being exposed to lead paint hazards in their building.
Plaintiffs respond by arguing that the jury verdict accorded with the weight of the evidence, that the damages Eire reasonable and in line with comparable cases, and that the award of punitive damages was justifiable as the defendants acted with a callous and reckless disregard for the plaintiffs’ safety.
Analysis
Motion to Set Aside the Verdict
The standard applicable to set aside a verdict pursuant to CPLR 4404 (a) requires that the trial court conclude “there is simply no valid line of reasoning and permissible inferences which could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial.” (Cruz v New York City Tr. Auth., 31 AD3d 688, 691 [2d Dept 2006].) A jury verdict should not be set aside as against the weight of the evidence unless the verdict could not have been reached upon any fair interpretation of the evidence. (CPLR 4404 [a].)
*726 Accordingly, this court must determine whether the jury’s verdict was inconsistent, that is, whether the “evidence at trial provided a valid line of reasoning and permissible inferences to support the jury’s conclusions.” (Scibelli v Eugene G. Herman, D.M.D., P.C., 49 AD3d 627, 627 [2d Dept 2008]; see also Cohen v Hallmark Cards, 45 NY2d 493 [1978].)
Specifically we consider whether, upon a fair interpretation of the evidence presented, the verdict that the infant plaintiffs did not suffer past pain and suffering, but will suffer future pain and suffering, is inconsistent, and whether there is sufficient evidence in the record to support the finding of future pain and suffering.
Damages for the loss of the pleasures or the enjoyment of life, often called hedonic damages, are frequently an important aspect of a recovery for pain and suffering. (Kreindler, Rodriguez, Beekman and Cook, New York Law of Torts § 21:20 [16 West’s NY Prac Series Aug. 2007].)
Unlike a typical traumatic injury to the body, here there was evidence that the plaintiffs’ pain and suffering caused by the lead poisoning will manifest as developmental deficits of their mental and intellectual abilities. These developmental deficits will diminish the plaintiffs’ ability to enjoy life in the future, despite the fact that their ability to enjoy life presently may not be affected.
Defendants’ expert, Dr. Masur, agreed with the plaintiffs’ experts as to the potential harm that lead can cause, but he stated, as to Yesenia’s future ability, that “there’s nothing in the records that would suggest that Yesenia will not continue to function at the best level of her ability.”
As to plaintiff Wendy, Dr. Masur opined that she would have no difficulties as she progressed academically and, in fact, that it was his opinion that “there is nothing in the records that would demonstrate that her lead levels have caused any kind of problem for her.”
Defendants also called Dr. Wolf who testified that there was “no reason to think [Yesenia] wouldn’t continue to do well” in the future and that as regards Wendy, he stated he didn’t “see that there would be any problem in the future.”
Plaintiffs called Dr. Vicki Sudhalter, a neuropsychologist who tested both infant plaintiffs. Dr. Sudhalter testified that the lead intoxication manifests as children grow older and the work expected of them, as a result of the lead poisoning, becomes *727 more difficult at higher grades. She stated that lead poisoned children must work harder to keep up. She further stated that due to the lag effect when dealing with lead, that within a reasonable degree of developmental, psychological and neuropsychological certainty, “it takes a while for a developmental deficit to show up.”
As to Yesenia, Dr. Sudhalter went on to testify that she “would expect at some point for Yesenia to have some major problems . . . her language problems would begin to impact on her ability to do well in high school,” and that she “would expect that these deficits are going to interfere more greatly, and we’ll begin to see other ones emerge as the child gets older.”
As to Wendy, Dr. Sudhalter testified that the “lag effect” may affect her ability to succeed in the future. She stated that children with the diagnosed deficits Wendy has are “not able to keep up with their peers,” and that they may develop behavioral issues and have difficulties academically.
The testimony of Dr. Sudhalter, in particular, supports the jury’s verdict that, although plaintiffs’ injuries do not justify past conscious pain and suffering, they will suffer in the future as the result of the lead poisoning.
Defendants cite the case of Cadet v City of New York (238 AD2d 368, 368 [2d Dept 1997], citing Torres v City of New York, 226 AD2d 701 [2d Dept 1996]) for the proposition that a verdict awarding future pain and suffering while denying any award for past pain and suffering is an inconsistent verdict. However the Cadet case is distinguishable from the case at bar.
In Cadet, the plaintiffs alleged injuries included a fracture of the lumbar spine and smoke inhalation sustained at the time of the incident, as well as post-traumatic stress disorder. Evidence was presented at trial to support the fact that each injury occurred as the result of, and manifests itself, immediately following the incident. The court held that given the evidence presented, the jury could not have reasonably concluded that Cadet’s injuries would worsen over time.
In the Torres case, the plaintiff had been shot through the back, the bullet lodging in his abdomen. The Appellate Division found that the verdict, which awarded $6,000,000 in future pain and suffering, but nothing in past pain and suffering, “was an impermissible compromise based on sympathy for the plaintiff.” (226 AD2d at 702.) The Second Department held that since liability was established, an award of nothing for past pain and *728 suffering was inadequate for the serious injuries plaintiff sustained.
However, unlike injuries such as a fracture of the lumbar spine or a gunshot wound which would cause conscious pain immediately, plaintiffs herein produced evidence through the testimony of Dr. Sudhalter that the injuries will cause the loss of enjoyment of life only in the future.
Defendants have failed to demonstrate that Dr. Sudhalter’s testimony defies common sense and logic.
The nature of lead poisoning is such that it does not produce physical pain. It is not visible or perceivable to the victim or casual observer. The injury caused by the poisoning, decreased mental abilities, often manifests itself over time. The impact developmental deficits have on a child increases as a child matures and is expected to perform on an adult level.
“Resolution of issues of credibility is primarily a matter to be determined by the factfinder who saw and heard the witnesses, and the factfinder’s determination should be accorded great deference on appeal.” (People v Bisono, 37 AD3d 844, 844-845 [2d Dept 2007], citing People v Romero, 7 NY3d 633, 644-645 [2006].)
Here the jury made a credibility determination as between experts, which was their charge. And although plaintiffs’ experts’ testimony differs from that of defendants’ witnesses, this question as to credibility of experts does not compel finding judgment in favor of defendants notwithstanding the verdict. There is nothing in the verdict to suggest that it was a compromise or that it was not based on Dr. Sudhalter’s opinion that it takes a while for a developmental deficit to show up, and the evidence submitted of plaintiffs’ academic performance.
Based upon the testimony offered at trial, a valid line of reasoning and permissible inferences could lead rational people to conclude as the jury did in the instant matter. Therefore the defendants’ motion to set aside the verdict as inconsistent must be denied.
Motion to Dismiss or Reduce the Amount of Punitive Damages
The jury awarded the plaintiffs punitive damages in the amount of $260,000. Defendants argue that the award of any punitive damages was not appropriate in this matter because plaintiffs failed to show “by clear, unequivocal and convincing evidence, egregious and willful conduct that is morally culpable, or is actuated by evil and reprehensible motives,” citing several First Department cases in support of this position.
*729 Defendants point out that defendant Kalliopi Notias testified that she was unaware there were children in the apartment and therefore she could not have knowingly put the children at risk.
The Second Department recently held that “[pjunitive damages are recoverable in a negligence action only where the conduct in question evidences a high degree of moral culpability or the conduct is so flagrant as to transcend mere carelessness and constitutes willful or wanton negligence or recklessness.” (Kraycar v Monahan, 49 AD3d 507, 508 [2d Dept 2008] [internal quotation marks omitted]; see also Lee v Health Force, 268 AD2d 564, 564 [2d Dept 2000]; Rey v Park View Nursing Home, 262 AD2d 624, 627 [2d Dept 1999].)
There was clear and convincing evidence to show that defendant Notias was aware of the dangers of lead; her testimony demonstrated she had knowledge of its danger.
The jury could also have reasonably inferred that defendants knew of the presence of children in the apartment both through the defendants’ testimony that they would go by the apartment “more than monthly,” and by the superintendent’s knowledge that the children were there. The jury could properly reject defendants’ denial of the presence of the children.
Furthermore, the evidence shows that an inspection of the premises was conducted on Januaiy 18, 2001. The defendants in this matter were notified by the Department of Health of a dangerous lead condition in the subject apartment by an order to abate dated January 31, 2001.
A Department of Health inspection report dated March 5, 2001 found that the lead conditions still existed, and the Department issued a notice to complete repairs dated March 13, 2001.
Defendants continued to ignore the orders to abate.
There was yet another inspection conducted by the Department of Health on April 2, 2001 which found the lead conditions still uncorrected. Defendants began abatement on April 6, 2001. Defendants were again notified of the need to abate by an order dated April 11, 2001.
By letter dated May 30, 2001, Maria Notias was once again notified that the levels of lead remaining in the apartment exceeded acceptable levels, months after the initial inspection and first notification to defendants.
Also, Stavros Notias testified at a deposition that he was aware of the dangers of lead-based paint in the early 1990s, that he was aware that the City had to conduct lead abatements on *730 two prior apartments in this very building, and that he specifically was aware that lead paint was hazardous to children. Kalliopi Notias also testified to knowing about the dangers of lead paint.
The foregoing evidence in the records demonstrates that defendants were put on notice of the dangerous lead conditions in the plaintiffs’ apartment on at least two occasions and yet failed to take action to abate the conditions. Even after beginning work to abate the conditions, they were cited for failing to abate the conditions adequately. Further, even prior to getting notice of the lead conditions in plaintiffs’ apartment, defendants had notice of hazardous lead conditions in another apartment in the building and an order to abate the conditions in that apartment.
Defendants argue, in the alternative, that even if punitive damages were justified, the punitive damages award was excessive.
In BMW of North America, Inc. v Gore (517 US 559 [1996]), the U.S. Supreme Court addressed the issue of the reasonableness of punitive damage awards. It set forth certain factors which should be considered in determining whether a punitive damage award is excessive. Those factors are “[1] the degree of reprehensibility of the [conduct]; [2] the disparity between the harm or potential harm suffered . . . and [the] punitive damages award; and [3] the difference between [the punitive damages award] and the civil penalties authorized or imposed in comparable cases.” (BMW of North America, Inc. v Gore, 517 US 559, 575 [1996].)
Here there was clear and convincing evidence from which the jury could conclude that defendants’ refusal to abate the hazardous lead conditions, knowing children were residing there, constituted reprehensible conduct; defendants knew of the dangers posed to young children residing in apartments with lead-based paint, and they refused to abate the hazard after having been notified on multiple occasions of the urgent need to do so.
It is reasonable for a jury to conclude that defendants’ refusal to act to protect the infant residents is morally reprehensible behavior or constituted willful or wanton negligence or recklessness.
The second factor is the reasonableness of the punitive damages relative to the compensatory damages awarded.
*731 The Court in Gore reviewed and reduced an award where the punitive damages exceeded the actual damages by a ratio of 500 to 1. The Court refused to adopt a simple mathematical formula in the calculation of reasonable punitive damages, noting that there are instances where a “categorical approach” based upon actual damages would not lead to a reasonable conclusion. (Id. at 582.) Instead they stated,
“ ' “We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that [a] general concer[n] of reasonableness . . . properly enter[s] into the constitutional calculus.” ’ [TXO Production Corp. v Alliance Resources Corp., 509 US 443,] 458 (quoting Haslip, 499 U.S., at 18).” (Id. at 582-583.)
In this case, the punitive damages awarded against defendants were $260,000, where the total compensatory damages were $800,000. At bar the punitive damages cannot be found to be disproportionate, as they are less than one third of the amount of compensatory damages.
Lastly, defendants argue that, in awarding the punitive damages, the jury “may have been motivated by passion.”
The case they cite in support of this position is a Court of Appeals case entitled Nardelli v Stamberg (44 NY2d 500 [1978]).
In fact in that case the Court stated (at 503-504),
“Whether to award punitive damages in a particular case, as well as the amount of such damages, if any, are primarily questions which reside in the sound discretion of the original trier of the facts (see Kujek v Goldman, 150 NY 176, 180; Walker v Sheldon, 10 NY2d 401, 405), in this case the jury, and such an award is not lightly to be disturbed. This does not mean that the Appellate Division or the trial court Judge may never interfere with such a jury award; those courts may, of course, exercise their own discretionary authority to overturn an excessive jury verdict and order a new trial unless the plaintiff will consent to a reduction in amount (see Faulk v Aware, Inc., 19 AD2d 464, affd without opn 14 NY2d 899; Gostkowski v Roman Catholic Church, 237 App Div 640, affd 262 NY 320). We would caution, however, that the amount of exemplary damages awarded by a jury should not be *732 reduced by a court unless it is so grossly excessive ‘as to show by its very exorbitancy that it was actuated by passion’ (1 Clark, New York Law of Damages, § 56, p 102; accord Restatement, Torts, Comment d, § 908; 14 NY Jur, Damages, § 188).”
At bar defendants offer no basis for this court concluding that the jury’s verdict was “actuated by passion.” In the absence of such a showing, the Court’s cautionary advice in Nardelli is that punitive damages should not be reduced. (Id.)
In fact the Second Department held in Buckholz v Maple Garden Apts., LLC (38 AD3d 584, 585 [2d Dept 2007]) that “[p]unitive damages are warranted where the conduct of the party being held liable evidences a high degree of moral culpability, or where the conduct is so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence or recklessness.” (See also Rey v Park View Nursing Home, 262 AD2d 624 [2d Dept 1999]; Lee v Health Force, 268 AD2d 564 [2d Dept 2000].)
We conclude that in fact punitive damages are warranted here as the defendants were found liable and their conduct “constituted willful or wanton negligence or recklessness.” (Buckholz v Maple Garden Apts., LLC at 585.)
This court finds the jury’s award of punitive damages is justified on the facts of this case. Therefore the award of punitive damages in the amount of $260,000 will be undisturbed.
Wherefore, by reason of the foregoing, defendants’ motion to set aside the verdict or reduce the punitive damages as excessive is denied.