■ WENDY SOLIS-VICUNA et al., Respondents, v MARIA NOTIAS et al., Appellants, et al., Defendants. [898 NYS2d 45]—

In an action to recover damages for personal injuries, the de-

fendants Maria Notias, Constantine Notias, Stavros G. Notias, and Kalliopi Notias appeal from an order of the Supreme Court, Kings County (Saitta, J.), dated June 23, 2008, which denied their motion pursuant to CPLR 4404 (a) to set aside a jury verdict which, upon finding that they were 40% at fault for the injuries of the plaintiff Wendy Solis-Vicuna, and 100% at fault for the injuries of the plaintiff Yesenia Solis, awarded the plaintiff Wendy Solis-Vicuna damages in the sum of $420,000 for future pain and suffering, awarded the plaintiff Yesenia Solis damages in the sum of $380,000 for future pain and suffering, and awarded the plaintiffs punitive damages in the sum of $260,000.

Ordered that the order is affirmed, with costs.

The plaintiff Yesenia Solis was born on October 19, 1995. Her sister, the plaintiff Wendy Solis-Vicuna, was born on February 23, 1998. Until September 1999 the infant plaintiffs lived with their parents, the plaintiff Julia Vicuna and Dimas Solis, in a Brooklyn building owned by the defendants Jian Pyng Tan and Yi Ching Tan. In October 1998 Wendy was found to have a blood-lead level of 22 micrograms per deciliter (hereinafter µg/dl). A blood-lead level in excess of 10 µg/dl is considered poisonous. That month the New York City Department of Health (hereinafter the Department of Health) issued an order directing the Tans to abate the lead-paint hazard in the plaintiffs' apartment.

In September 1999 Vicuna moved with the infant plaintiffs to Vicuna's home village in Mexico to care for Vicuna's mother. Solis remained in New York. Following their return to the United States, the infant plaintiffs and their parents moved to an apartment owned by the appellants (hereinafter the subject apartment). Vicuna testified that the children were always playing in the apartment when either the appellant Maria Notias or one of her daughters visited the apartment to collect rent. In addition, the superintendent of the building, Wilfredo Torres, who lived across the hall from the plaintiffs' apartment, had young children who played and went to school with the infant plaintiffs. Accordingly, the plaintiffs presented evidence to demonstrate that the appellants were aware that there were young children living in the plaintiffs' apartment.

In January 2001 the Department of Health inspected the subject apartment and found illegal levels of lead therein. Commencing in January 2001 the Department of Health sent the appellants several notices directing them to abate the condition. Nevertheless, the appellants did not begin the abatement work until April 2001. In May 2001 the Department of Health gave

further notice to the appellants that the lead dust had not been adequately cleaned from the apartment. The infant plaintiffs again underwent blood-lead level testing which revealed elevated blood-lead levels as high as 15 µg/dl.

The jury found the Tans 60% at fault and the appellants 40% at fault as to Wendy and awarded damages in the sum of $420,000 for future pain and suffering over 62 years, and found the appellants 100% at fault as to Yesenia and awarded her damages in the sum of $380,000 for future pain and suffering over 57 years. The jury did not award either of the infant plaintiffs damages for past pain and suffering. The jury also awarded the plaintiffs punitive damages in the sum of $260,000 against the appellants. The appellants moved to set aside the verdict pursuant to CPLR 4404 (a), arguing that the compensatory damages awards were against the weight of the evidence and excessive, that the plaintiffs were not entitled to punitive damages, and that even if they were, the punitive damage award was excessive. In an order dated June 23, 2008, the Supreme Court, denied the motion. The appellants appeal from the denial of their motion pursuant to CPLR 4404 (a) on the grounds specified therein but do not contest the finding of liability against them or the jury's apportionment of fault between the Tans and them.

Contrary to the appellants' contention, the verdict awarding damages for future pain and suffering without awarding damages for past pain and suffering was not inconsistent. The verdict was reasonable inasmuch as the plaintiffs' medical experts testified that the infant plaintiffs suffered brain damage as a result of their exposure to lead dust, were only beginning to exhibit the sequella of lead poisoning, and that their conditions would worsen over time. To the extent the appellants' experts testified to the contrary, the conflict in the testimony presented questions of credibility to be resolved by the jurors, whose determination is entitled to great deference (see Fryer v Maimonides Med. Ctr., 31 AD3d 604, 605 [2006]; Teneriello v Travelers Cos., 264 AD2d 772 [1999]). Under these circumstances, where the plaintiffs presented evidence that the damages from lead poisoning were not immediately manifest but will worsen over time, the award of future damages, but no past damages, is not an indication that the jurors were confused or that there was a compromise verdict (see Balmaceda v Perez, 182 AD2d 983, 984 [1992]; cf. Cadet v City of New York, 238 AD2d 368 [1997]; Torres v City of New York, 226 AD2d 701, 701-02 [1996]).

Moreover, the damages awarded for future pain and suffering

did not deviate materially from what would be considered reasonable compensation (*see e.g. Guerrero v Djuko Realty*, 300 AD2d 542 [2002]; *Padilla v Jols Realty Corp.*, 284 AD2d 512, 513 [2001]; *La Fountaine v Franzese*, 282 AD2d 935, 936 [2001]; *see generally* CPLR 5501 [c]; *Harvey v Mazal Am. Partners*, 79 NY2d 218, 225 [1992]; *Bonilla v New York City Tr. Auth.*, 295 AD2d 297 [2002]).

An award of punitive damages serves the dual purpose of punishing the offending party and deterring similar conduct on the part of others (*see Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 479 [2007]; *Biondi v Beekman Hill House Apt. Corp.*, 94 NY2d 659, 663 [2000]; *Randi A. J. v Long Is. Surgi-Ctr.*, 46 AD3d 74, 81-82 [2007]). Even absent proof of a mens rea of intent, punitive damages may be assessed where a defendant's actions evince a high degree of moral culpability or demonstrate a wanton or reckless disregard for the rights of the plaintiff (*see Giblin v Murphy*, 73 NY2d 769, 772 [1988]; *Walker v Sheldon*, 10 NY2d 401, 404 [1961]; *Randi A. J. v Long Is. Surgi-Ctr.*, 46 AD3d 74, 81 [2007]; *Serota v Mayfair Super Mkts., Inc.*, 15 AD3d 385 [2005]). Whether to award punitive damages in a particular case is primarily a question within the sound discretion of the jury, and an award of punitive damages should not be lightly disturbed on appeal (*see Nardelli v Stamberg*, 44 NY2d 500, 503 [1978]; *Laurie Marie M. v Jeffrey T.M.*, 159 AD2d 52, 59 [1990], *affd* 77 NY2d 981 [1991]).

Here, the plaintiffs presented evidence demonstrating that the appellant Stavros Notias was aware of the dangers of lead paint as of the early 1990s as a result of orders the appellants received from the Department of Health to abate lead paint in two other apartments in the building, that lead paint was harmful to young children, and that the appellants knew young children lived in the apartment. Moreover, as noted above, in January 2001 the Department of Health gave notice to the appellants that they were required to abate the lead paint in the subject apartment, but the appellants did not begin the abatement work until April 2001. In May 2001, a further inspection by the Department of Health revealed that the apartment had not been adequately cleaned of lead dust. Under these circumstances an award of punitive damages was not unreasonable (*see Guariglia v Price Chopper Operating Co., Inc.*, 38 AD3d 1043 [2007]; *Gruber v Craig*, 208 AD2d 900, 901 [1994]; *cf. Munoz v Puretz*, 301 AD2d 382, 384-385 [2003]; *see generally Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d 337 [2003]). Moreover, the punitive damages awarded were not excessive (*see generally State Farm Mut. Automobile*

*Ins. Co. v Campbell,* 538 US 408, 425 [2003]; *BMW of North America, Inc. v Gore,* 517 US 559 [1996]). Skelos, J.P., Florio, Hall and Austin, JJ., concur. **[Prior Case History: 20 Misc 3d 723.]**