**Voss v Mandak Veterinary Servs.**

2024 NY Slip Op 33398(U)

September 30, 2024

Supreme Court, Saratoga County

Docket Number: Index No. EF20233361

Judge: Richard A. Kupferman

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SARATOGA

---

SHARIN VOSS,

                              Plaintiff,

                    -against-

MANDAK VETERINARY SERVICES, THEODORA
JEANNE SMITH, D.V.M. (A/K/A TEDDY SMITH,
D.V.M.), SARA BRYN RADIGAN, D.V.M., HEATHER
ANNE TILLSON, D.V.M.,

                              Defendants.

**DECISION & ORDER**

**Index No.: EF20233361**

---

Appearances:

Peggy L. Collen, Esq.
Attorney for Plaintiff
17 State Street, Floor 40
New York, New York 10004

Brian P. Henchy, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
Attorneys for Defendants
200 Great Oaks Boulevard, Suite 228
Albany, New York 12203

KUPFERMAN, J.:

In this action, the plaintiff asserts claims against a veterinary practice, its owner (a veterinarian), and two employees (associate veterinarians) in connection with the treatment of her dog. The complaint asserts five causes of action. The first cause of action is for veterinary malpractice. The remaining causes of action are for lack of informed consent, negligence, corporate negligence, and negligent infliction of emotional distress. The complaint also contains a demand for punitive damages.

1

In lieu of an answer, the defendants seek to dismiss the complaint pursuant to CPLR 3211(a)(7) for failure to state a claim. In support of the motion, the defendants rely upon an affirmation from their litigation counsel, records from the veterinary practice (attached to the attorney affirmation), and a memorandum of law.

In opposition, the plaintiff relies upon an attorney affirmation, an affidavit from herself, and a memorandum of law. In her affidavit, the plaintiff accuses the defendants of altering the veterinary records to bolster their defense. She asserts that the veterinary records provided to the Court by the defendants are different from the records provided to her prior to the commencement of this action. In reply, the defendants have submitted an affirmation from the owner of the practice. While admitting that there are "several differences" between the records, the owner asserts that the differences are immaterial and that the records were not altered to fabricate evidence or mislead.

On a motion to dismiss under CPLR 3211(a)(7), the Court must "accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 141 [2017] [internal quotation marks, brackets, and citation omitted]). "Whether the complaint will later survive a motion for summary judgment, or whether the plaintiff will ultimately be able to prove its claims, of course, plays no part in the determination of a prediscovery CPLR 3211 motion to dismiss" (Shaya B. Pacific, LLC v. Wilson, Elser, Moskowitz, Edelman & Dicker, 38 AD3d 34, 38 [2d Dept 2006]).

"The sole criterion ... is whether, from the pleading's four corners, factual allegations are discerned which taken together manifest any cause of action cognizable at law" (Doller v Prescott, 167 AD3d 1298, 1299 [3d Dept 2018] [internal quotation marks, brackets, and citation omitted]).

2

While a court may under limited circumstances consider extrinsic evidence from the movant, such evidence may not form the basis for dismissal unless it "conclusively establishes the falsity of an alleged fact" (Gray v Schenectady City School Dist., 86 AD3d 771, 772 [3d Dept 2011]).

### First Cause of Action (Veterinary Malpractice)

With respect to the first cause of action, the plaintiff has sufficiently alleged facts that, if true, would constitute veterinary malpractice. The plaintiff alleges, among other things, that a veterinarian employed by the practice (Dr. Radigan) wrongfully prescribed medication which resulted in her dog's death, and that another employee-veterinarian (Dr. Tillson) failed to properly treat the dog's adverse side effects from the medication. When read broadly, the first cause of action further seeks to hold the veterinary practice and its owner liable for the alleged malpractice of their associates. These allegations are sufficient to state a claim for veterinary malpractice (see CPLR 3013; 3026; 3211[a][7]; 3 NY Jur Animals § 162 [NY Jur 2d, West 2024] [discussing veterinary malpractice]; see also BCL § 1505 [a] [i] [shareholder liability]; 2 Warren's Negligence in the New York Courts § 42.04 [1] [Bender 2024] [doctrine of respondeat superior]).

Even if the Court were to look at the veterinary records, beyond the four corners of the complaint, the malpractice claim would still survive this motion. As explained above, to justify summary dismissal, the extrinsic evidence relied upon by the defendants on this motion must conclusively establish the falsity of the alleged facts in the complaint (see Gray, 86 AD3d at 772; see also CPLR 3211[a][1]; Lewis v Di Donna, 294 AD2d 799, 800 [3d Dept 2002]). Specifically, the evidence must be of "undeniable authenticity" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10). The contents of the evidence must also be unambiguous and "essentially undeniable" (id; see Mason v First Cent. Natl. Life Ins. Co. of N.Y., 86 AD3d 854, 855 [3d Dept 2011] [medical records]).

3

The defendants have failed to satisfy this standard. The records are uncertified and have not been properly authenticated; rather, they were simply attached to the affirmation of the defendants' litigation counsel (see CPLR 4518; Ingber v Mario L. Martinez, 191 AD3d 959, 961 [2d Dept 2021]; VXI Lux Holdco S.A.R.L. v SIC Holdings, LLC, 171 AD3d 189, 193 [1st Dept 2019]). In addition, while the records reiterate the care allegedly provided, they do not set forth the applicable standard of care. Nor could the average layperson conclude as a matter of law, based solely on the medical records, that the veterinarians complied with the standard of care. The records are therefore facially incapable of conclusively demonstrating the absence of any malpractice (see 3 NY Jur Animals § 162 [NY Jur 2d, West 2024] ["Ordinarily, in a veterinary malpractice action, expert testimony is necessary to establish the applicable standard of care, as well as a deviation from such standard ... unless the matter is one within the experience and observation of the average layperson."]).[1]

The defendants next contend that the malpractice claim should be dismissed as against the two associate veterinarians, as they were acting within the scope of their employment when they provided care and treatment to the dog. As authority for this proposition, the defendants cite to Mendez v City of New York, 259 AD2d 441 (1st Dept 1999), which holds that employees may not be held individually liable for torts committed by their employers where such employees did not commit any "independently tortious conduct" (id. at 442). The defendants, however, misinterpret Mendez (as well as other similar cases cited in their reply papers). They erroneously interpret Mendez as holding that an employee who participates in the commission of a tort may not be held individually liable if the employee was acting on behalf of the employer.

---

[1] The contents of business records created by an opposing party are also not conclusive of the facts. To the extent that the plaintiff may have a different personal recollection or otherwise obtains contrary evidence during discovery, she is entitled to challenge their accuracy.

4

Mendez, however, did not decide this issue. There, the plaintiff sought to hold the employee liable for a tort allegedly committed by an employer. Here, the situation is reversed. The plaintiff is seeking to hold the employer liable for a tort (malpractice) allegedly committed by employees. Indeed, the claim against the employees is based on their own independent conduct (i.e., their care and treatment of the dog).

In any event, the First Department (which decided Mendez) has since clarified that a person "who participates in the commission of a tort may be held individually liable, regardless of whether [such person] acted on behalf of the corporation in the course of official duties" (Peguero v 601 Realty Corp., 58 AD3d 556, 558 [1st Dept 2009]; see also W. Joseph McPhillips Inc. v Ellis, 278 AD2d 682 [3d Dept 2000]; Bellinzoni v Seland, 128 AD2d 580 [2d Dept 1987]; Krystal G. v Roman Catholic Diocese of Brooklyn, 34 Misc 3d 531 [Sup Ct, Kings County 2011]).

To the extent that any doubt may exist, Warren's Negligence further explains that "[t]he employee and the vicariously liable employer are jointly and severally liable" (2 Warren's Negligence in the New York Courts § 42.04 [12] [Bender 2024]). The plaintiff "may sue either or both the employee and employer and may recover the total amount of damages from either party" (id.). Similarly, New York Practice Guide further clarifies that corporate directors and officers who commit or participate in the commission of a tort may be held personally liable "even if [the tort] was committed in the course of their duties and for the corporation's benefit" (1 NY Practice Guide: Business and Commercial § 6.14).

Second Cause of Action (Lack of Informed Consent)

The defendants further contend that a veterinary malpractice claim based on the lack of informed consent is not cognizable. In support of this contention, the defendants assert that "there is no statutory right of action for lack of informed consent in veterinary malpractice cases" and

5

that such a claim must "arise out of common law" (Defendants' Memorandum of Law, at Page 4). The defendants further assert, without citing any legal authority, that a claim under the common law for lack of informed consent is duplicative of a claim for professional negligence.

In Laskowitz v CIBA Vision Corp., 215 AD2d 25 (2d Dept 1995), the Second Department held that the statutory provision governing a claim based on the lack of informed consent, Public Health Law § 2805-d, did not apply to the defendant (an optometrist), as the statute limits itself to actions based on medical, dental, and podiatric malpractice. The court nonetheless discussed the common law doctrine of informed consent and explained that the purpose of the statute's enactment in 1975 (medical profession) and its ensuing amendments in 1985 (dentists) and 1986 (podiatrists) was not to eliminate a common law claim for lack of informed consent against all health care providers. Rather, the purpose was to place limitations on such a claim for those professions covered by the statute. Further, the court concluded that, for the rest of the professionals listed in Title VIII of the Education Law (including veterinarians), a lack of informed consent claim remains "legally and logically cognizable" (id. at 28), and that "the other health care professions not named in Public Health Law § 2805-d remain bound by their traditional, common-law duty to obtain a patient's informed consent" (id. at 31).

Based on the holding in Laskowitz, as well as the case law recognizing the distinct nature of a lack of informed consent claim under the common law, this Court cannot blindly agree with the defendants that the second cause of action for lack of informed consent is duplicative of the first cause of action based on professional negligence (see e.g. Garone v Roberts' Technical & Trade School, Inc., 47 AD2d 306 [1st Dept 1975]; Zeleznik v Jewish Chronic Disease Hospital, 47 AD2d 199 [2d Dept 1975]; Di Rosse v Wein, 24 AD2d 510 [2d Dept 1965]; Barnette v Potenza, 79 Misc 2d 51 [Sup Ct, Nassau County 1974]). To the contrary, the claims appear to be factually

6

and legally distinct and should be pleaded and (if appropriate) submitted to the jury separately. Moreover, although the plaintiff has pleaded facts relevant to the lack of informed consent in both the first and second causes of action, this does not require dismissal of the second cause of action as duplicative, as pleading defects must be ignored where a substantial right of a party is not prejudiced (see CPLR 3026).[2]

Turning now to the legal sufficiency of the allegations, the second cause of action clearly fails to state a claim against Dr. Tillson. In fact, the second cause of action does not even reference Dr. Tillson. The second cause of action is therefore dismissed as against Dr. Tillson. In contrast, the plaintiff's allegations are sufficient to state a claim for lack of informed consent as against Dr. Radigan (directly) and the other two defendants (derivatively). Among other things, the plaintiff alleges that Dr. Radigan failed to inform her of the risks associated with the use of a prescribed medication and the alternative treatment options; that a reasonable practitioner in similar circumstances would have disclosed such risks and alternatives; that the plaintiff, like a reasonably prudent person, would not have used the prescribed medication if the risks and alternatives had been disclosed; and that such nondisclosure has caused her to suffer injuries (see e.g. Public Health Law § 2805-d [setting forth the elements of a medical malpractice claim based on the lack of informed consent and providing that the claim may be based on "non-emergency treatment"]; Marchione v State, 194 AD2d 851 [3d Dept 1993] [alleged use of medication without full disclosure of the risks]; Muchler v Brenton, 207 AD2d 977 [4th Dept 1994] [same]; Farkas v Saary, 191 AD2d 178 [1st Dept 1993] [same]; Abril v Syntex Laboratories, Inc., 81 Misc 2d 112

---

[2] A review of Public Health Law § 2805-d (considered by analogy) also refutes the defendants' bald conclusion that the claims are duplicative (see e.g. Burgos v Bieniewicz, 135 AD3d 810 [2d Dept 2016] [holding that lack of informed consent is a distinct cause of action from medical malpractice]; PJI 2:150 & 2:150A; see also Snyder v Simon, 49 AD3d 954 [3d Dept 2008]).

7

[* 8]

[Sup Ct, New York County 1975]; compare Brady v Westchester County Healthcare Corp., 78 AD3d 1097 [2d Dept 2010] [involving the alleged failure to properly diagnose and treat]).

Accordingly, the second cause of action is dismissed as against only Dr. Tillson. That part of the motion seeking to dismiss the second cause of action against the remaining defendants is denied.[3]

Third Cause of Action (Negligence)

Regarding the cause of action for negligence, the defendants contend that the claim sounds in professional malpractice, not ordinary negligence, and therefore should be dismissed. A claim sounds in professional malpractice, not ordinary negligence, when it constitutes treatment for a medical condition undertaken by a licensed professional (see Angell v State, 278 AD2d 776, 777 [3d Dept 2000]). Here, the duty alleged to have been breached arises from the treatment and care provided. Specifically, the plaintiff seeks to recover based on the alleged improper evaluation and diagnosis, the prescription of medicine, and the alleged failure to properly treat the dog's adverse side effects from the medication. Such a claim is grounded in professional malpractice (see Education Law § 6701 [defining the practice of veterinary medicine as including "diagnosing, treating, … [and] prescribing for any animal disease, … injury, … or physical condition …"]; Gale v Animal Med. Ctr., 108 AD3d 497, 498-499 [2d Dept 2013] [dismissing gross negligence claim as duplicative]; see also Angell, 278 AD2d at 777-778 [claim sounded in malpractice where the allegation stemmed from an improper assessment of the decedent's condition]). Accordingly, the negligence claim is duplicative of the malpractice claim and is therefore dismissed.

---

[3] Notably, the parties have not adequately briefed the potential application and scope of a lack of informed consent claim against a veterinarian. This part of the motion is therefore denied, without prejudice.

[* 9]

Fourth Cause of Action

The fourth cause of action alleges corporate negligence. When the allegations therein are construed broadly, it appears that the plaintiff is seeking to impose liability on the veterinary practice and its owner under the doctrine of respondeat superior. This is how both sides have construed the complaint (see Plaintiff's Memorandum of Law, at Page 23; Defendants' Memorandum of Law, at Page 7). As discussed above, this theory of liability is already encompassed within the first cause of action for veterinary malpractice. This portion of the fourth cause of action is therefore dismissed as duplicative.

In addition, when read broadly, the fourth cause of action also asserts direct claims against the veterinary practice and its owner for negligent hiring, retention, training, and supervision. The Court agrees that such claims are unnecessary and should be dismissed in cases where a defendant employer admits that it would be responsible to pay any judgment rendered against its employees for their alleged wrongdoing (see McCarthy v Mario Enters., Inc., 163 AD3d 1135, 1137 [3rd Dept 2018]; Rossetti v Board of Educ., 277 AD2d 668, 670 [3d Dept 2000]).[4] Here, the veterinary practice has admitted that "it would be vicariously liable for the individually named defendants" (Defendants' Memorandum of Law, at p. 4). The claims for negligent hiring, retention, training, and supervision are therefore dismissed as against the veterinary practice.

---

[4] In general, "where an employee is acting within the scope of his or her employment, the employer is liable under the theory of respondent superior, and the plaintiff may not proceed with a claim to recover damages for negligent hiring, retention, supervision, or training" (McCarthy, 163 AD3d at 1137 [internal quotation marks and citations omitted]). "The rationale ... is that if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training" (id. [internal quotation marks and citation omitted]; see Segal v St. John's Univ., 69 AD3d 702, 703 [2d Dept 2010]).

9

The owner, however, has not joined in this admission. Nor has the owner conceded that she would be liable as a shareholder-supervisor if the employees were ultimately found to have engaged in professional misconduct (see BCL § 1505 [shareholder liability]; Education Law § 6706).[5] As such, the claims for negligent hiring, retention, training, and supervision (at least at this time) constitute viable alternative theories of liability as against the owner (see McCarthy, 163 AD3d at 1137 ["allegations of vicarious liability, though incompatible with a claim of negligent hiring and supervision, do not require dismissal because a plaintiff may plead inconsistent theories in the alternative"]; CPLR 3014; see also Connell v Hayden, 83 AD2d 30 [2d Dept 1981] [discussing the liability of a supervisor for a co-employee's torts]; Krystal G., 34 Misc 3d at 531).

### Fifth Cause of Action (Negligent Infliction of Emotional Distress)

The defendants also seek to dismiss the fifth cause of action for negligent infliction of emotional distress. The Court agrees that this is not a viable claim. Several cases highlight this. In Jason v Parks, 224 AD2d 494, 495 (2d Dept 1996), the Second Department affirmed the dismissal, for failure to state a cause of action, that part of a complaint seeking to recover damages for emotional distress in a veterinary malpractice action. There, the court concluded that "a pet owner in New York cannot recover damages for emotional distress caused by the negligent destruction of a dog" (id.). Again, in Lewis v Di Donna, 294 AD2d 799, 801 (3d Dept 2002), the Third Department reiterated that "damages for the loss of a pet are limited to the value of the pet at the time it died." More recently, in Leistner v Vanini, 208 AD3d 1625, 1626 (4th Dept 2022),

---

[5] The complaint alleges that the veterinary practice is a professional corporation organized under the laws of this State. Education Law § 6706 further provides that only domestic professional service corporations may be organized for the practice of veterinarian medicine. To the extent that Article 15 of the BCL applies, Section 1505 (a) (i) provides that a "shareholder, employee or agent of a professional service corporation ... shall be personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by him or by any person under his direct supervision and control while rendering professional services on behalf of such corporation."

10

the Fourth Department concluded that it is "well settled" that this State "does not recognize a claim for negligent infliction of emotional distress for the loss of animals" (id.; see also Schrage v Hatzlacha Cab Corp., 13 AD3d 150, 150 [1st Dept 2004]; Fowler v Ticonderoga, 131 AD2d 919, 921 [3d Dept 1987]; 3 NY Jur Animals §§ 159, 162 [NY Jur 2d, West 2024]).

These cases make clear that, even if the law is evolving on the value of pets as the plaintiff contends, it still does not recognize this cause of action for the loss of a dog. Accordingly, the fifth cause of action is therefore dismissed.

Punitive Damages

Turning to the plaintiff's demand for punitive damages, the Court agrees that the factual allegations, even if true, are insufficient to satisfy the elements required to recover punitive damages (see Marinaccio v Town of Clarence, 20 NY3d 506, 511 [2013]; Sweeney v McCormick, 159 AD2d 832, 833-834 [3d Dept 1990]; Warren's Negligence in New York Courts § 236.05 [Bender 2024] [discussing punitive damages against an employer]). Nonetheless, given the nature of this action (professional misconduct) and the stage of this proceeding (pre-discovery), the dismissal of the demand for punitive damages claim would be "premature" as the plaintiff "has not had an adequate opportunity to conduct discovery into issues within the knowledge of the moving party" (Marsh v Arnot Ogden Med. Ctr., 91 AD3d 1070, 1072 [3d Dept 2012] [internal quotation marks and citation omitted]; see Gipe v DBT Xpress, LLC, 150 AD3d 1208, 1209-1210 [2d Dept 2017]; see also CPLR 3211[d]; Fleming v Jenna's Forest Homeowners' Assn., Inc., 228 AD3d 1101 [3d Dept 2024]).

Accordingly, the motion to dismiss the demand for punitive damages is denied, without prejudice to renew after the completion of discovery.

11

[* 11]

Attorney's Fees and Sanctions

The Court further denies the defendants' request for attorney's fees and motion costs, as well as the plaintiff's request for sanctions. Neither side has demonstrated their entitlement to such relief.

It is therefore,

**ORDERED,** that the defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED,** that the second cause of action for lack of informed consent as against Dr. Tillson; the third cause of action for negligence; the fourth cause of action for corporate negligence as against Mandak Veterinary Services; that part of the fourth cause of action against Dr. Smith based on the doctrine of respondeat superior; and the fifth cause of action for negligent infliction of emotional distress are all hereby **DISMISSED**; and it is further

**ORDERED,** that the defendants' request for attorney's fees and costs is hereby **DENIED**; and it is further

**ORDERED,** that any relief not expressly granted herein is hereby **DENIED**, without prejudice.

This constitutes the Decision and Order of the Court. No costs are awarded to any party. The Court is uploading the original for filing and entry. The Court further directs the parties to serve notice of entry of this Decision and Order in accordance with the Local Protocols for Electronic Filing for Saratoga County.

So-Ordered.

Dated: September 30, 2024
at Ballston Spa, New York

HON. RICHARD A. KUPFERMAN
Justice Supreme Court

Enter.

12

Papers Considered:
NYSCEF Doc. Numbers 1-29

[* 13]