Holland v Cayuga Med. Ctr. at Ithaca, Inc. (2021 NY Slip Op 03896)





Holland v Cayuga Med. Ctr. at Ithaca, Inc.


2021 NY Slip Op 03896


Decided on June 17, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 17, 2021

532192
[*1]E. Ann Holland et al., Respondents,
v
Cayuga Medical Center at Ithaca, Inc., et al., Appellants.

Calendar Date:April 29, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Levene Gouldin & Thompson, LLP, Vestal (Margaret J. Fowler of counsel), for appellants.
Friedman, Hirshen & Miller, LLP, Clifton Park (Jeanne M. Gonsalves Lloyd of counsel), for respondents.



Reynolds Fitzgerald, J.
Appeal from that part of an order of the Supreme Court (McBride, J.,), entered September 14, 2020 in Tompkins County, which denied defendants' motion for summary judgment dismissing the complaint.
In April 2017, plaintiff E. Ann Holland was delivered by ambulance to Cayuga Medical Center symptomatic of a stroke. After a CT scan revealed that she was indeed suffering a stroke in the left cerebral artery and that it was ischemic in nature, the physician on duty prescribed that she be treated with 90 milligrams of Alteplase (hereinafter tPA)[FN1] by infusion, and directed that it be administered so that Holland received 10% of the medication in the first minute, with the remaining 90% dispensed over the following 60 minutes. However, rather than program the machine to dispense the initial bolus in "1" minute as prescribed, a nurse programmed "11" causing the machine to be set to dispense 9 milligrams per minute for 11 minutes. After approximately three minutes, the mistake was discovered, the dosage was recalibrated, and the machine reset. However, approximately 30 minutes later, Holland showed signs of significant distress and the tPA was discontinued. A second brain scan was then taken to detect any hemorrhaging,[FN2] but none was found, and an MRI taken the following day revealed that clots remained in her left hemisphere. Ultimately, Holland does have aphasia and comprehension limitations.
Holland and her spouse, derivatively, commenced this action alleging medical malpractice, to wit, the misadministration of the tPA resulted in injuries to Holland. Defendants moved for summary judgment dismissing the complaint, asserting a lack of proximate cause between the dosage error and Holland's injuries. Plaintiffs opposed the motion and cross-moved for summary judgment or alternatively to preclude defendants' expert witnesses. Supreme Court, addressing plaintiffs' claims as sounding in medical malpractice, denied the motions finding that the conflicting medical opinions raised issues of fact precluding summary judgment. Defendants appeal from the portion of the order denying their motion for summary judgment.
Initially, we agree with Supreme Court that, contrary to plaintiffs' argument that the matter sounds in both ordinary negligence and medical malpractice, the case is one of medical malpractice only. "Conduct may be deemed malpractice, rather than negligence, when it constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" (Newell v Ellis Hosp., 117 AD3d 1139, 1140 [2014] [internal quotation marks and citations omitted]). "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts[*2]" (Matter of Barresi v State of New York, 232 AD2d 962, 963 [1996] [internal quotation marks and citations omitted]). As relevant here, plaintiffs' claims are based upon allegations that defendants acted negligently in their medical care and treatment of plaintiff — i.e., defendants' actions or omissions with respect to the proper dosing of tPA, the progression of the stroke with or without the proper administration of tPA, the medical benefits and risks of tPA based on the proper or improper administration of the medication, and the potential loss of the opportunity to attain tPA's benefits based on its improper administration. Although it is undisputed that a nurse inadvertently mis-administered the tPA by erroneously programming the pump, she was assisting the physician by administering the prescribed medication and was an integral part of the process of rendering medical treatment to the patient. The nurse's error does not transform this case to one of simple negligence rather than medical malpractice (see Perkins v Kearney, 155 AD2d 191, 193 [1990]). Accordingly, Supreme Court properly addressed the complaint as one for medical malpractice, rather than ordinary negligence (see Davis v South Nassau Communities Hosp., 26 NY3d 563, 581 [2015]; Angell v State of New York, 278 AD2d 776, 777-778 [2000]; Perkins v Kearney, 155 AD2d at 193).
"The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury" (Howard v Stanger, 122 AD3d 1121, 1123 [2014] [internal quotation marks, brackets and citations omitted], lv dismissed 24 NY3d 1210 [2015]). On a motion for summary judgment, defendants bear the initial burden of establishing that there was no deviation or departure from the applicable standard of care or that any alleged departure did not proximately cause the patient's injuries (see Pullman v Silverman, 28 NY3d 1060, 1062 [2016]; Furman v Desimone, 180 AD3d 1310, 1311 [2020]). To meet this burden, defendants must submit a physician's affidavit opining that the care provided did not depart from the applicable standard of care or that such departure was not the proximate cause of plaintiff's injury (see D'Orta v Margaretville Mem. Hosp., 154 AD3d 1229, 1231 [2017]; Carter v Tana, 68 AD3d 1577, 1579 [2009]).
In support of their motion, defendants submitted Holland's medical records, the deposition transcripts of Holland, her husband and various medical staff on duty the day of the misadministration of the tPA, and the affidavits of two medical experts, Frederick S. Cohn and Michael G. Dunn. Initially, we note that Cohn is not a neurologist, nor is there anything in his curriculum vitae indicating that he has familiarity with the field. "While it is true that a medical expert need not be a specialist in a particular field in order to testify regarding accepted practices in that field, the [affiant] nonetheless should be possessed [*3]of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable" (Postlethwaite v United Health Servs. Hosps., 5 AD3d 892, 895 [2004] [internal quotation marks and citations omitted]; see Chillis v Brundin, 150 AD3d 1649, 1650 [2017]). As such, his affidavit, wherein he opines with respect to the standard of care applicable to defendants' treatment of Holland, lacks probative value (see Simpson v Edghill, 169 AD3d 737, 739 [2019]).
Conversely, Dunn is a board-certified neurologist. In his affidavit, he declared that defendants provided "reasonable and appropriate care" in treating and diagnosing plaintiff and in "correcting an error in programming the medication administration pump." Dunn further opined that "[t]he tPA had to be discontinued because of [Holland's] status decline" and "[t]he error [in wrongly programming the machine] was not a substantial factor in producing injury nor did it deprive the patient of a substantial possibility of avoiding injury." Accordingly, we find, as Supreme Court did, that defendants met their burden of entitlement to summary judgment as a matter of law and that the burden shifted to plaintiffs to establish a triable issue of fact as to a causal nexus between the deviation and Holland's injuries (see Cole v Chun, 185 AD3d 1183, 1187 [2020]; Conto v Lynch, 122 AD3d 1136, 1137 [2014]; Friedland v Vassar Bros. Med. Ctr., 119 AD3d 1183, 1187 [2014]).
For plaintiffs to satisfy their burden, it was incumbent on them to submit their own expert affidavit raising a question of fact with respect to these issues. Plaintiffs submitted the affidavit of Richard Lechtenberg, a board-certified neurologist. In this affidavit, Lechtenberg opined that Holland did not receive the proper tPA dosing and that this breach deviated from the applicable standard of care. He further stated that because Holland was given an improper dose, she was deprived of a substantial possibility of a better outcome, up to and including a 100% recovery. Additionally, Lechtenberg specifically states that Holland "experienced a worsening of her stroke likely caused by progression of cerebral ischemia and clots evolving/propagating from her stroke condition," and that the "specified tPA treatment [could have] prevent[ed] the stroke worsening." After reviewing his affidavit, we find it neither speculative nor conclusory, and any scrutiny with respect to the source or basis for the expert's opinion, or the credibility of the affiant himself, is properly left to cross-examination at trial (see Elsawi v Saratoga Springs City Sch. Dist., 141 AD3d 921, 922-923 [2016]; Lopez-Viola v Duell, 100 AD3d 1239, 1242 [2012]). In light of these contrasting expert opinions, and viewing the evidence in a light most favorable to plaintiffs, we find that plaintiffs raised "a triable issue of fact regarding whether [Holland] would have had a better outcome" if given the proper administration [*4]of tPA (D'Orta v Margaretville Memorial Hosp., 154 AD3d at 1233; see Cole v Chun, 185 AD3d at 1187; Randall v Kingston Hosp., 135 AD3d 1100, 1104 [2016]).
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: This acronym stands for tissue plasminogen activator.

Footnote 2: Hemorrhaging is a contraindication of tPA.