Stanton v Waterfront Ctr. for Rehabilitation & Healthcare (2024 NY Slip Op 00696)

Stanton v Waterfront Ctr. for Rehabilitation & Healthcare

2024 NY Slip Op 00696

Decided on February 9, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 9, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., BANNISTER, NOWAK, DELCONTE, AND KEANE, JJ.

28 CA 22-01992

[*1]MARGERY STANTON, AS EXECUTOR OF THE ESTATE OF SALLY KELLER, DECEASED, PLAINTIFF-RESPONDENT,
v
WATERFRONT CENTER FOR REHABILITATION AND HEALTHCARE, ELLICOTT CENTER FOR REHABILITATION AND NURSING, WATERFRONT OPERATIONS ASSOCIATES, LLC, CENTERS HEALTH CARE, CENTERS FOR SPECIALTY CARE GROUP LLC, CENTERS FOR SPECIALTY CARE GROUP IPA, LLC, KENNETH ROZENBERG AND JEFFREY SICKLICK, DEFENDANTS-APPELLANTS. 

CAITLIN ROBIN & ASSOCIATES PLLC, NEW YORK CITY (CAITLIN ROBIN OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 
BROWN CHIARI LLP, BUFFALO (BRIAN R. HOGAN OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Craig D. Hannah, J.), entered November 22, 2022. The order, insofar as appealed from, granted the motion of plaintiff for partial summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff, in her capacity as power of attorney for Sally Keller (decedent), commenced this action seeking to recover damages for injuries sustained by decedent, who was a resident at defendant Waterfront Center for Rehabilitation and Healthcare (Waterfront), after she developed an infection in her left eye following cataract surgery that became so severe that the eye required surgical removal. Decedent died during discovery, and plaintiff was substituted as the named plaintiff in her capacity as executor of decedent's estate. Defendants appeal, as limited by their brief, from an order insofar as it granted plaintiff's motion for partial summary judgment on the issue of liability regarding the first cause of action and the claim for violation of Public Health Law § 2801-d under the second cause of action. We affirm.
As a preliminary matter, we conclude that plaintiff's first cause of action sounds in medical malpractice inasmuch as her "allegation that the lack of [appropriate] medical treatment resulted in [decedent's] need for surgery [to remove her left eye] is an allegation concerning the medical consequences of the lack of [appropriate] treatment and is an allegation that is not 'within the ordinary experience and knowledge of laypersons' " (McDonald v State of New York, 13 AD3d 1199, 1200 [4th Dept 2004]). In particular, plaintiff claims that the nursing staff at Waterfront failed to administer the anti-inflammatory steroid eye drops directed by decedent's ophthalmologist following decedent's cataract surgery on her left eye and later opted to treat decedent with antibiotic eye drops after she began exhibiting signs of a post-operative infection rather than immediately transferring her to the ophthalmologist's office or the emergency department. Those claims concern acts or omissions that "constitute medical treatment or bear a substantial relationship to the rendition of medical treatment" (Karasek v LaJoie, 92 NY2d 171, 175 [1998]; see Bleiler v Bodnar, 65 NY2d 65, 66-67, 72 [1985]; Holland v Cayuga Med. Ctr. at Ithaca, Inc., 195 AD3d 1292, 1293-1294 [3d Dept 2021]; see generally Weiner v Lenox Hill [*2]Hosp., 88 NY2d 784, 787-788 [1996]).
On the merits, we conclude that Supreme Court properly granted the motion with respect to the first cause of action. Contrary to defendants' contention, plaintiff met her initial burden on the motion of establishing her entitlement to judgment as a matter of law on that cause of action (see Cyrus v Rochester Regional Health & Unity Hosp. at Park Ridge, 206 AD3d 1589, 1589-1590 [4th Dept 2022]; Salter v Deaconess Family Medicine Ctr. [appeal No. 2], 267 AD2d 976, 976-977 [4th Dept 1999]). Plaintiff's submissions included decedent's medical records and the written report of the New York State Department of Health (DOH) pertaining to its investigation of Waterfront, the latter of which constitutes "presumptive evidence of the facts so stated therein" (Public Health Law § 10 [2]; see Maldonado v Cotter, 256 AD2d 1073, 1074-1075 [4th Dept 1998]). Those submissions established that nursing staff at Waterfront failed to administer the anti-inflammatory steroid eye drops directed by decedent's ophthalmologist following decedent's cataract surgery on her left eye and subsequently opted to treat decedent with certain antibiotic eye drops over a weekend later in the month after she began exhibiting signs of a post-operative infection instead of immediately transferring her to the ophthalmologist's office or the emergency department for more intensive treatment. Plaintiff also submitted the affidavit of a medical expert who, upon setting forth his qualifications and the specific factors appearing in the report and medical records that led him to his conclusions, opined that defendants deviated from the standard of care and that such deviations proximately caused the loss of decedent's left eye. According to the medical expert, defendants' initial failure to administer the anti-inflammatory steroid eye drops caused decedent to develop endophthalmitis and defendants' later delay in sending decedent to her ophthalmologist or the emergency department on an urgent basis caused the infection to progress to an irrecoverably severe point and contributed to the need to surgically remove the eye (see Cyrus, 206 AD3d at 1590; see also Jeannette S. v Williot, 179 AD3d 1479, 1480-1481 [4th Dept 2020]).
We agree with defendants that they raised an issue of fact whether the post-operative failure to administer anti-inflammatory steroid eye drops was a proximate cause of the infection that resulted in the loss of decedent's left eye inasmuch as defendants submitted in opposition to the motion the affirmation of their medical expert and the deposition testimony of decedent's ophthalmologist contradicting the opinion of plaintiff's expert on that issue (see Florio v Kosimar, 79 AD3d 625, 626 [1st Dept 2010]).
We nonetheless further conclude that, contrary to defendants' contention, they failed to raise a triable issue of fact whether the decision to treat decedent with certain antibiotic eye drops over the weekend instead of immediately sending decedent to the ophthalmologist's office or the emergency department on an urgent basis was consistent with good and accepted medical practice. Although defendants' expert opined that Waterfront's treatment of decedent with the antibiotic eye drops was "an appropriate first step," defendants' expert did not adequately address the conclusion of plaintiff's expert that the standard of care for a person with decedent's presentation of endophthalmitis required examination at the ophthalmologist's office or the emergency department on an urgent basis, nor did defendants' expert address many of the undisputed facts concerning decedent's treatment including, critically, those contained in the report and medical records documenting decedent's worsening infection symptoms over the period that Waterfront chose to treat decedent with antibiotic eye drops that proved ineffective instead of seeking, as urged by the ophthalmologist's office upon consultation at the outset of decedent's symptoms, more intensive and specialized care to address the infection (see Wicks v Virk, 198 AD3d 1315, 1315 [4th Dept 2021]; see also Cyrus, 206 AD3d at 1590). Likewise, defendants' expert did not controvert the opinion of plaintiff's expert that Waterfront's delay in sending decedent to her ophthalmologist or the emergency department on an urgent basis caused the infection to progress to an irrecoverably severe point and contributed to the need to surgically remove the eye (see Keller v Liberatore, 134 AD3d 1495, 1496 [4th Dept 2015]).
We further conclude that the court properly granted that part of plaintiff's motion with respect to the claim for violation of Public Health Law § 2801-d under the second cause of action. On her motion, plaintiff "bore the initial burden of establishing . . . prima facie entitlement to judgment as a matter of law and to 'show that there is no defense to [that] cause of action' " (Masheh v JHF Mgt., LLC, 200 AD3d 1621, 1621 [4th Dept 2021], quoting CPLR 3212 [b]; see generally Rodriguez v City of New York, 31 NY3d 312, 317, 320 [2018]). Plaintiff met her initial burden by establishing that decedent was injured as a result of a deprivation of a right [*3]or benefit established for the well-being of a patient of a residential health care facility by state regulation, including 10 NYCRR 415.3 (f) (1) (i), and that defendants did not "exercise[ ] all care reasonably necessary to prevent and limit the deprivation and injury" (§ 2801-d [1]; see generally Cornell v County of Monroe, 158 AD3d 1151, 1152 [4th Dept 2018]). Defendants failed to raise a triable issue of fact in opposition to the motion (cf. Cornell, 158 AD3d at 1153).
Entered: February 9, 2024
Ann Dillon Flynn
Clerk of the Court