Barbaro v Eger Health Care & Rehabilitation Ctr. (2024 NY Slip Op 50882(U))

[*1]

Barbaro v Eger Health Care & Rehabilitation Ctr.

2024 NY Slip Op 50882(U)

Decided on July 11, 2024

Supreme Court, Richmond County

DiDomenico, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 11, 2024
Supreme Court, Richmond County

Susan Barbaro, AS EXECUTRIX OF THE 
 ESTATE OF SUSAN ESPOSITO, DECEASED, Plaintiff,

against
Eger Health Care and Rehabilitation Center, Defendant.

Index No. 150689/2022

Plaintiff is represented by: 
Joseph Panarella Esq. 
Krentsel & Guzman, LLP 
17 Battery Pl. Ste. 604 
New York, NY 10004 
Defendant is represented by 
Taryn M. Fitzgerald Esq. 
Vigorito, Barker, Patterson, Nichols & Porter, LLP 
300 Garden City Plaza, Ste. 100
Garden City, New York 11530 

Catherine M. DiDomenico, J.

Recitation as required by CPLR 2219(a) of the papers considered in the review of Motion
Sequence Number 001 Numbered
Summons and Complaint, 1
Notice of Motion by Defendant (001), 2
Affidavit and Affirmation in Opposition by Plaintiff, 3
Reply Affirmation by Plaintiff 4 
Transcript dated 01/24/24 5
Upon the foregoing cited papers, the Decision and Order is as follows:[*2]

 Defendant's Motion / Relevant Facts
The present action was commenced with the filing of a Summons with Verified Complaint [FN1]
on April 11, 2022. Therein, Plaintiff asserts four causes of action relating to the death of Susan Esposito ("Decedent"), her mother, who was a resident of Defendant's nursing home. Ms. Esposito was 95 years old at the time of her passing. Specifically, Plaintiff asserts causes of action for Wrongful Death, Negligence, and for violations of New York Public Health Law §2801(d) and §3203(c). In addition to these delineated causes of action Plaintiff's Complaint also makes allegations of gross negligence, without specifically asserting a cause of action for Gross Negligence.
Plaintiff alleges that on October 25, 2019, Decedent was initially admitted to Defendant Eger Health Care and Rehabilitation Center for rehabilitation following surgery to her wrist. However, shortly after admission she was transferred to a long-term care unit, and by November 2019, she was transferred to a palliative care unit with "do not resuscitate" and "do not hospitalize" orders in place. On the evening of April 15, 2020, Decedent began experiencing "COVID-19 like symptoms" and was administered oxygen treatment. When a doctor attended to her on the morning of April 16, 2020, she was found to be unresponsive as she had passed away overnight. Plaintiff alleges that Decedent passed away from COVID-19 due to the gross negligence of Defendant in failing to take preventative measures to avoid transmission of the disease in their facility. Notably, Plaintiff's medical records indicate a medical history significant for breast cancer, hypertension, and dementia. Her medical records further indicate that on March 9, 2020, she was attended to by an Infectious Disease consultant who found her to be positive for Respiratory Syncytial Virus ("RSV"). 
On November 22, 2023, Defendant moved by pre-answer Notice of Motion (Seq. No. 001) for an order dismissing Plaintiff's Complaint pursuant to CPLR § 3211(a)(7), on the ground that it is immune from liability under New York's Emergency or Disaster Treatment Protection Act ("EDTPA"), or in the alternative, the Federal Public Readiness and Emergency Preparedness Act ("PREP Act"). Plaintiff submitted opposition on December 12, 2023, and Defendant filed reply papers on January 23, 2024. Oral argument was held on January 24, 2024, and the motion was submitted for decision upon receipt of the transcript.
 Applicable Law
When considering a motion to dismiss pursuant to CPLR § 3211(a)(7) for a failure to state a cause of action, a complaint is given a liberal construction, the facts alleged therein are presumed to be true and the plaintiff is afforded the benefit of every favorable inference. See Watts v. City of New York, 129 N.Y.S.3d 340 (2d Dept. 2020). However, bare legal conclusions and factual claims that are flatly contradicted by evidence in the motion record are not entitled to this presumption. See Pincus v. Wells, 35 AD3d 569 (2d Dept. 2006). The [*3]defendant bears the burden of establishing that the complaint fails to state a cause of action. See Connolly v. Long Island Power Auth., 30 NY3d 719 (2018). Generally, the role of the court is to determine only whether the facts as alleged fit within a cognizable legal theory. See Martinez v. NYC Health & Hosps. Corp., 203 N.Y.S.3d 653 (2d Dept. 2024). However, a court may consider evidentiary material submitted by a defendant in support of a motion to dismiss pursuant to CPLR §3211(a)(7). See Bokhour v. GTI Retail Holdings, Inc., 941 N.Y.S.2d 675 (2d Dept. 2012). If a court considers evidentiary material, but does not convert the motion into one for summary judgment, the relevant question becomes whether the proponent of the pleading has a cause of action, not simply whether he or she has stated one. See Sokol v. Leader, 904 N.Y.S.2d 153 (2d Dept. 2010). However, this is not equivalent to a summary judgment standard as a plaintiff is not required to supplement his pleading with an affidavit and "will not be penalized because he has not made an evidentiary showing in support of his complaint." Rovello v. Orofino Realty Co., 40 NY2d 633 (1976); 106 N. Broadway, LLC v. Lawrence, 189 AD3d 733 (2d Dept. 2020); E&D Group, LLC v. Vialet, 134 AD3d 981 (2d Dept. 2015).

Decision
Under the EDTPA, which was enacted on April 3, 2020, nursing homes were granted immunity from civil and criminal liability for any alleged harm or damages sustained from the provision of health care services related to the COIVD-19 pandemic. See Former Public Health Law §3082(1); see also Mera v. New York City Health & Hosps. Corp., 197 N.Y.S.3d 278 (2d Dept. 2023). However, this immunity does not apply to acts or omissions constituting "willful or intentional criminal misconduct, gross negligence, reckless misconduct, or the intentional infliction of harm. See Former Public Health Law §3082(2). It is the moving defendant's initial burden to establish that they qualify for EDTPA immunity.
If a nursing home successfully establishes immunity under the EDTPA, a motion to dismiss must be granted unless the plaintiff's complaint makes non-conclusory allegations that the nursing home's acts or omissions constituted gross negligence or intentional conduct. See Hasan v. Terrace Acquisitions II, LLC, 203 N.Y.S.3d 325 (1st Dept. 2024); See also Est. of Alechko by Dingee v. Sprain Brook Manor Rehab, LLC, 203 N.Y.S.3d 865 (NY Sup. Ct. 2024). To constitute gross negligence, a party's conduct must "smack of intentional wrongdoing or evince a reckless indifference to the rights of others." Huang v. Fort Greene Partnership Homes Condominium, 2024 NY Slip Op 03471 (2d Dept. 2024); see also Seti v. Carnell Assocs., Inc., 193 N.Y.S.3d 80 (2d Dept. 2023).
As a threshold matter, Plaintiff argues that the EDTPA is not applicable to this case at all, as it was retroactively repealed on April 7, 2021. However, the appellate courts of this state have repeatedly held that the EDTPA was not repealed retroactively but prospectively. See Damon v. Clove Lakes Healthcare & Rehabilitation Ctr., Inc., 2024 NY Slip Op. 03029 (2d Dept. 2024); see also Whitehead v. Pine Haven Operating LLC, 222 AD3d 104 (3rd Dept. 2023). Accordingly, the law remains controlling for this proceeding as its causes of action accrued before the repeal date. See Ruth v. Elderwood at Amherst, 175 N.Y.S.3d 811 (4th Dept. 2022).
Having determined that the EDTPA is controlling law, the Court must now determine if [*4]Defendant meets the three-prong test necessary to qualify for immunity. For immunity to attach, a nursing home must establish three requirements: (1) that the health care services were provided to the patient pursuant to a COVID-19 emergency rule or applicable law; (2) that the services were "impacted" by decisions or activities responsive to the COVID-19 pandemic and in support of the State's directives; (3) and the health care services to the patient were provided in good faith. See Public Health Law former §3082(1); see also Damon v. Clove Lakes Healthcare & Rehab. Ctr., Inc., 2024 NY Slip Op. 03029 (2d Dept. 2024). A nursing home can meet their burden to establish immunity under the EDTPA through the affidavit of a medical director who had personal knowledge of the facilities response to the COVID-19 pandemic. See Whitehead v. Pine Haven Operating LLC, 201 N.Y.S.3d 697 (3d Dept. 2023); See also Crampton v. Garnet Health, 155 N.Y.S.3d 699 (NY Sup. Ct. 2021); See also Bologna v. Carmel Richmond Nursing Home, Inc., 208 N.Y.S.3d 850 (NY Sup. Ct. 2024).
Defendant offers an affirmation from its Medical Director, Dr. Donna Seminara. Dr. Seminara claims to have personal knowledge of the Defendant's response to the COVID-19 emergency and its compliance with applicable health laws, regulations, and mandates. Dr. Seminara further claims that she obtained knowledge regarding Defendant's treatment of Decedent through a review of her medical chart. For the limited purpose of establishing immunity, Dr. Seminara's affirmation shows that Defendant developed and implemented various policies in response to the COVID-19 pandemic and in compliance with the recommendations of the New York State Department of Health and the Federal Centers for Disease Control. Dr. Seminara's affirmation also provides examples of how Decedent's treatment was "impacted" by the policies instituted by Defendant in response to COVID-19. Among other examples, Defendant established a separate COIVD-19 isolation unit; stopped visitation; had patients eat meals in their rooms; screened employees for COVID-19; kept patients' doors shut; suspended recreational activities; and had weekly staff meetings to keep abreast of changes to the guidelines. Finally, Dr. Seminara claims that the extensive treatment and care provided to Decedent, as exhibited in her 700-page medical chart, satisfies the "good faith" element of the immunity test. 
Challenging the first and second prongs of the immunity test, Plaintiff claims that Decedent was not being treated for COVID-19 at Defendant's facility but rather for rehabilitation following surgery for a wrist fracture. Therefore, Plaintiff argues that Decedent's treatment was not directly "impacted" by the facilities response to COVID-19 regulations. Factually, Plaintiff's allegation is misleading, as while Decedent was initially admitted for rehabilitation, she was thereafter transferred to a long-term care residential unit and was being treated for dementia. Ultimately, before her passing, she was transferred to the nursing home's palliative care unit and was being treated for various conditions, including RSV. In any event, the factual predicate for the first two prongs of the immunity test is minimal, requiring only a showing that the patient's treatment was "impacted in some way" by decisions or actions made in response to the COVID-19 pandemic, and in support of state directives. See Highsmith v. Woodhull Med. Ctr., 83 Misc 3d 1203(A) (Sup. Ct. Kings. Cty. 2024); see also Alexander v. Grand S. Point, LLC, 205 N.Y.S3d 752 (Sup. Ct. Nass. Cty. 2024). That impact may be positive, negative, or neutral, and Defendant need not establish that Plaintiff's treatment was impacted in some particular manner different from that of other residents. See Crampton v. Garnet Health, 73 Misc 3d 543 (Sup. [*5]Ct. Org. Cty. 2021).
After considering the arguments raised by both sides, this Court finds that Dr. Seminara's affirmation is sufficient to establish the first two prongs of the EDTPA immunity test, that Defendant was providing health care services pursuant to applicable COVID-19 laws and rules, and that Decedent's care was impacted by the policy changes Defendant implemented. Moreover, a review of the extensive medical records provided by Defendant establishes the third prong of the test, that Defendant was rendering care to Decedent in good faith. As Defendant has affirmatively established its entitlement to immunity under the EDTPA, the Court must now consider whether Plaintiff's Complaint asserts any non-conclusory allegations of gross negligence or intentional conduct that will survive dismissal. See Martinez v. NYC Health & Hosps. Corp., 223 AD3d 731 (2d Dept. 2024). As the Court has considered evidentiary material in support of the present motion to dismiss, the standard has become whether Plaintiff has a cause of action for gross negligence, and not merely whether she has stated one. See 72 Poplar Townhouse, LLC v. Board of Mgrs. Of the 72 Poplar St. Condominium, 224 AD3d 645 (2d Dept. 2024).
Plaintiff's Complaint asserts four delineated causes of action [FN2]
, none of which are specifically identified as a cause of action for "Gross Negligence." While the legal definition of gross negligence is mentioned within the body of Plaintiff's "Negligence" cause of action, the two claims are not the same and should be plead separately. See CPLR §3014. "Gross negligence differs in kind, not only degree, from claims of ordinary negligence." Dolphin Holdings, Ltd. v. Gander & White Shipping, Inc., 122 AD3d 901 (2d Dept. 2014). A failure to properly distinguish claims of negligence and gross negligence has been found to be a basis for dismissal in the context of EDTPA immunity. See Estate of Alechko v. Sprain Brook Manor Rehab, LLC, 203 N.Y.S.3d 865 (Sup. Ct. West. Cty. 2024). Moreover, Plaintiff's Complaint is devoid of specific factual allegations regarding Decedent's care, and rather makes sweeping generalized allegations regarding Defendant's policies. To survive dismissal, a cause of action for gross negligence needs to allege facts sufficient to constitute willful or reckless conduct that evidences an indifference to the rights of others. See Skywest Inc. v. Ground Handling, Inc., 150 AD3d 922 (2d Dept. 2017). "Stated differently, a party is grossly negligent when it fails to exercise even slight care." Seti v. Carnell Assoc., Inc., 218 AD3d 509 (2d Dept. 2023). However, as this Court is bound to give Plaintiff's Compliant a liberal interpretation, it will address the allegations therein as if a cause of action for gross negligence was properly delineated. See Hager v. Union Carbide Corp. 106 AD3d 348 (1st Dept. 1984).
Plaintiff's first allegation of gross negligence is that Defendant "failed to maintain a system for preventing and controlling the spread of infectious diseases." Specifically, Plaintiff argues that in or around February 19, 2020, before COVID-19 was declared a pandemic, Defendant was "cited by government inspectors" for failing to ensure that an infection prevention control program was maintained to prevent and control the transmission of [*6]communicable diseases. However, Plaintiff makes this allegation without any specificity. Plaintiff fails to annex the citation, does not indicate the name of the agency, what Defendant was cited for, the law or regulation that was allegedly violated, or any remedial measures that it was required to take to address the alleged deficiency. 
While failing to maintain an adequate infection control program could constitute negligence, it does not rise to the level of morally culpable, reckless conduct necessary to establish gross negligence. See Hasan v. Terrace Acquisions II, LLC, 194 N.Y.S.3d 445 (NY Sup. Ct. 2023) affd. 224 AD3d 475 (1st Dept. 2024); see also Rey v. Park, 262 AD2d 624 (2d Dept. 1999). Moreover, Defendant established that after it was allegedly citied, it implemented several new policies to prevent the spread of COVID-19 before the Decedent's alleged infection. The infection control policies described by Dr. Seminara go well beyond the "slight care" or "slight diligence" standard necessary to defeat a claim of gross negligence. See Food Pageant, Inc. v. Consolidated Edison Co., 54 NY2d 167 (1981); see also Weiss v. Vacca, 219 AD3d 1375 (2d Dept. 2023); Hasan, 194 N.Y.S.3d at 479. 
Plaintiff next alleges that Defendant was grossly negligent by accepting patients into its facility without first testing them for COVID-19. In support of this allegation, Plaintiff submits an affidavit from Dr. William Bisordi, a board-certified physician in the field of internal medicine. Dr. Bisordi opines, to a reasonable degree of medical certainty, that Defendant's failure to test COVID-19 patients before admitting them into its facility knowingly placed its existing residents at increased risk for infection. However, this is irrelevant, as on March 25, 2020, the New York State Department of Health issued a regulation prohibiting nursing homes from denying admission based on a confirmed or suspected case of COVID-19. That regulation further prohibited testing for COVID-19 as a prerequisite for admission or re-admission. Under these circumstances a "failure to test" cannot constitute a viable claim for gross negligence. See Danielo v. Our Lady of Consolidation Geriatric Care Ctr., 2022 NY Misc. LEXIS 45453 (Sup. Ct. Suff. Cty. 2022). 
Dr. Bisordi's affidavit also raises allegations concerning the inadequacy of Defendant's pre-pandemic personal protection equipment ("PPE") and staffing levels. However, the EDTPA specifically precludes this argument. Pursuant to the statute, "acts, omissions or decisions resulting from a resource or staffing shortage shall be not considered to be . . . gross negligence." See Former NY Pub. Health Law §3082; see also Highsmith v. Woodhull Med. Ctr., 210 N.Y.S.3d 923 (Sup. Ct. NY Cty. 2024); see also Back v. Facey, 183 N.Y.S.3d 256 (Sup. Ct. NY Cty. 2023). In any event, Dr. Bisordi's expert affidavit regarding Defendant's pre-pandemic staffing and resource levels is speculative as he does not claim to have personal knowledge as to either allegation. See Arra v. Kumar, 200 AD3d 949 (2d Dept. 2021).
In addition to the specific allegations addressed above, Plaintiff's Complaint contains several sweeping generalized allegations regarding Defendant's policies, or alleged lack thereof. These allegations are not factually specific, do not directly relate to Decedent's care, and are vague, speculative, and conclusory. See Riback v. Margulis, 43 AD3d 1023 (2d Dept. 2007); see also Rios v. Tiny Giants Daycare, Inc., 135 AD3d 845 (2d Dept. 2016); Mancuso v. Rubin, 52 AD3d 580 (2d Dept. 2008). Plaintiff's allegations regarding a lack of care, treatment, and [*7]precaution are also flatly contradicted by the motion record. Dr. Seminara's affirmation conclusively establishes that Defendant undertook several preventative measures to comply with applicable health related rulings and guidance. See In re Est. of Margarechko, 2024 NYLJ LEXIS 395 (Sup. Ct. West. Cty. 2024). Moreover, Dr. Seminara's affirmation, and Decedent's medical records, establish that Defendant provided more than the "slight care and diligence" required to negate a claim for gross negligence. See Schapers v. W. Lawrence Care Ctr., LLC, 2023 NY Misc LEXIS 19934 (Sup. Ct. Qns. Cty. 2023). Finally, the allegations asserted by Plaintiff, even when considered to be true, do no rise to the level of wanton conduct and reckless disregard necessary to sustain a gross negligence cause of action. See Cameron v. Cobble Hill Health Ctr., Inc., 2024 NY Slip Op. 30249 (Sup. Ct. Kings. Cty. 2024); see also Vissichelli v. Glen-Haven Residential Health Care Facility, Inc., 136 AD3d 1021 (2d Dept. 2016); Travelers Prop. Cas. Co. of Am. v. Sanco Mech., Inc., 126 AD3d 527 (1st Dept. 2015).
Accordingly, As Defendant has established its entitlement to immunity under the EDTPA and Plaintiff has not alleged a viable, non-conclusory allegation of gross negligence, Defendant's motion to dismiss pursuant to CPLR §3211(a)(7) is granted and Plaintiff's case is dismissed with prejudice. Given this ruling the Court need not address Defendant's alternative request for dismissal pursuant to immunity under the Federal PREP Act. This constitutes the Decision and Order of the Court.
Dated: July 11, 2024

Footnotes

Footnote 1:Verified by counsel pursuant to CPLR §3020(d)(3) as Plaintiff resides outside the county in which the Plaintiff's attorneys maintain their office.

Footnote 2:(1) Violation of the Public Health Law; (2) Unnamed Cause of Action (appears to be Negligent Supervision & Hiring); (3) Negligence, (4) Wrongful Death